Good morning. My name is Vicki Meralt Buchanan. I'm here on behalf of Mady Chan. When Mr. Chan's attorney failed to advise or advise Mr. Chan to accept the plea, he made a gross error. At the plea negotiations, the government's attorney advised Mr. Chan that because of his own delays, he had waived his rights to the speedy trial dismissal. At that point in time, Mr. Chan's attorney had a duty to tell Mr. Chan that with a speedy trial violation, dismissal was mandatory and that waiver and estoppel do not apply. There is no evidence that Mr. Chan's attorney gave him this advice. Instead, he said, well, it has your motion might have merit, it could have a chance, you might win. Those are pretty weak in light of the succinct, clear, and explicit law on speedy trial rights. So in effect, you acknowledge that the attorney gave him counsel. It's hard to tell. No, wait a minute. Okay. He says that, and the district court found this to be credible, he said, the motion of my opinion had merit, meaning there was a realistic chance the court would grant the motion. And your argument is that that was deficient because it was a sure thing and the lawyer is obligated to tell him it's a sure thing. Is that your argument? Yes. Is there a single case that holds a lawyer's performance to be deficient for not telling a client it's a sure thing? I think that Rodriguez-Vegas is close. It's in a different context. It's in the context of deportation. Well, what did the lawyer told his client about that? Did he tell him that he had merit, that is, he was likely to be deported? He said it was possible. He said only it was possible. Right. But that was not good enough because under the deportation law, it was required. It was going to be required. So this was pretty weak tea to tell Mr. Chan that there is a waiver and estoppel issue. It was going to be dismissed. And he needed to tell him that. You're willing to say that now, but you're not appearing in front of the district court. What if the district court hadn't agreed? Then what do you do? How do you go back to your client and say it's a sure thing, but, oh, the judge disagreed with me? Well, in that case, then you appeal. Because it is wrong. It would be distinctly wrong. Sure, there's going to be a lightning strike sometime, but it's wrong, and it would go on appeal. And how is he going to be any more prejudiced by that? He's already been sitting there for 17 years. So there's no prejudice that's going to come out of making the wrong decision. There's really no impact on him sitting in jail either way, is there? Yes, there's a lot. There's a lot of impact. How is he impacted sitting in jail? He's going to be sitting in jail for a long, long time to come having nothing to do with this conviction. He's going to be sitting in jail a long time, but this conviction has a lot of issues, is still important despite the fact that he's going to be spending time in jail. He's got a — because of this, these convictions, he has six more felony counts. Who knows what's going to happen? Well, who knows is the answer you're giving me of the practical impact. What he does know is what he most wanted to make sure is that his members of his family would not have any proceedings further against them and that there would be a house left over after the forfeiture for his father. Those were practical considerations that had far more impact on his life than the conviction and sitting in jail, weren't they? Well, at one point in time, yes. Back at the beginning, when you look at FBI agent Dupre's declaration, he goes through this story about Mr. Chan crying and how sad he was and how concerned he was about his children and his family and all of this. Well, that was at the beginning of the case. That was in 1996, 1998, when his — when he had children. At the time of these plea negotiations, Mr. Chan's children were adults. His daughter Anita was 25 years old because Mr. Chan had been sitting in the Sacramento County jail for 17 years. I don't understand how we had this lost seven-year period in this case. It just — between the defense counsel, the prosecutor, the district court judge, how did this happen? It's almost like it just — it's like everything the STA is designed to prevent. I have no idea. Perhaps ask the defense counsel. He obviously didn't do anything. He did not — he didn't do anything for his client. If you look at this entire case, this case — Did you have a hearing in this case, an evidentiary? I wasn't in the case. When did you come into the case? I was appointed as appellate counsel. Appellate counsel. Okay. So previously in the district court, was he represented by the same counsel? Yes. He was represented by the same attorney throughout. Okay. And he's not the only one that didn't do anything in this case. This case was a tag-along to the case that was here in the northern district, the big RICO case. And so they just let it languish. Nobody did anything. Mr. Chan tried to do things, and his attorney would show up and say, oh, okay, we'll get a plea deal for you. Let's talk about Mr. Chan. Mr. Chan filed — did he pro se file an STA dismissal motion? Yes. Okay. And what happened with that motion? His attorney talked him out of filing it. I thought it was filed. He did file it, and then the attorney talked to the clerk to unfile it. Withdrew it. You're saying the attorney withdrew this. Yes. Had him pull the STA. That's my understanding. It's not clear as to what the documents were. I was unable to get documents from trial counsel. So it's hard to say exactly how these motions came about and when they were, but it was definitely six years later that this happened. If we were to remand for an evidentiary hearing, what would you do? Well, first of all, in an evidentiary hearing, I would find out what exactly Mr. Chan's attorney told him about the — whether or not a speedy trial motion would be granted. I think that's crucial. I think Mr. Chan and his attorney were looking at it and going, boy, we really were negligent for not doing anything for seven years, and, gee, maybe under estoppel and waiver, maybe we did waive our rights by sitting on our hands all this time. And Mr. Chan may very well have thought, well, this is the only way to get my family out of here, but it wasn't. There was dismissal motions for them, and if they hadn't been granted, perhaps they would have had to go to trial. The Judge Shub, if I have the correct pronunciation. Correct. It was the judge who handled the ineffective assistance of counsel motion. Was he also the judge overseeing the prior motions in the case? I believe so. And so this is what the judge says, as you know, in his ruling. The court finds that the defendant knowingly and voluntarily entered into a plea agreement and was properly advised by his counsel. While Petitioner and his family members all had a strong chance of prevailing on a motion to dismiss for speedy trial violations, there was nevertheless a risk that the court would deny the motion and Petitioner would lose the ability to protect his family members. So this is the judge who is intimately familiar with this litigation making those findings. How do you overcome that? Well, first of all, because nobody pointed out to the judge his prior statements that he had already made. He had made in other cases. My client was not a party to those. But the judge had said in those cases, he had said, first of all, I can't conceive of any way that this motion would not be granted if a dismissal motion was made. He also said later on, this case cries out for dismissal. So nobody pointed out to Judge Shub the fact that he had already was had how he actually felt about the case. Also, I think it's pretty clear that the court was letting the court believe that there must be some merit to this ineffective assistance of counsel because he did grant the certificate of appealability in this case. So he did make those statements earlier. And, sure, there's a risk. There's a risk that some judge is going to sit there and go against a particular rule of law. I've got to have many appeals where something like that happened. But it's not likely. And so it was something that Mr. Chan needed to know. Dismissal is mandatory, but there is a chance the judge was going to blow the law. Oh, I see that my warning light is on. Is there any other questions? Do you want to reserve the rest of your time? Yes. Okay. Thank you. Good morning, Your Honors. Jason Hitt on behalf of the United States. In this case, the United States asks that the Court enforce Matty Chan's knowing involuntary waiver of his right to appeal and collaterally attack. And if the waiver is not enforced, we'd ask that the Court find that Mr. Warner, Chan's lawyer, gave informed, responsible, and thoughtful advice to Chan in connection with his. Does he really have a record in which we could find that? Your Honor, I believe Mr. Warner's declaration does provide you the record to find that. He explains in detail that he communicated the offer, that he explained the impact of the offer, the benefits to Mr. Chan to protect his father's residence, to secure. Let's see. Maybe it's the hindsight. But every other defendant got dismissed on STA. No, not exactly. There were actually a – there was a trial of part of this indictment. Wee Chi Luong was tried in 2006. He and his brother were convicted. There were a number of defendants who entered guilty pleas much earlier in the docket. But as to certain defendants who were remaining, that's true. At the time, after the – the ones who had sat through the seven years all got their cases dismissed? Yes. Those were – that's correct, Your Honor. John Luong. So what is your understanding of what happened that this case languished for seven years? I think the best answer, the most candid answer, is that the Court and the parties were really focused on – there was the homicide case in Sacramento that was also before Judge Shub. In the docket, there are numerous entries indicating that that case was sort of the priority because it involved defendants who were looking at life who had not been convicted in the Northern District RICO case. You also had a large number of family members who were out of custody, and there's a lot of waivers of appearance. So I think the parties and the Court – and it fell on the government. It was the government's obligation to not let this happen. It kind of fell into an autopilot while parts of the case moved forward. And that's ultimately why I think the Court dismissed under the Speedy Trial Act. So when you get to the time of the order to show cause, was there anything that posed a real risk to defendant? I mean, it's hard for me to figure out how a Speedy Trial Act violation couldn't be found at that point. Well, I think the question is yes. I mean, there were, from the tone of the order to show cause and the facts that Mr. Chan had made, he was aware himself. He had written the motion. It's very well written. He was a very adept litigant himself. He spent plenty of time in court, so it wasn't unfamiliar to him. Correct. And on the specific issue of Speedy Trial, he had obviously researched and knew even before the order to show cause or shortly after that he had this claim and it might be successful. But I think the crux of this appeal is he made a reasonable and informed decision to not take a risk and really to secure benefits for his family. And ultimately, Mr. Warner is in the position of providing the advice. And I think it comes across in his declaration. He was even a little bit surprised why Mr. Chan would take this position, having already researched it. You have the order to show cause. Why not just run the motion and then if you want to enter a plea, try and go back to the government? I don't understand. Maybe you can cast light on this. But if he had such a strong Speedy Trial Act case, why would he enter into a plea waiving the Speedy Trial Act? I just don't understand that. Well, I think the answer is what was quoted earlier by Your Honor, and that is the court, the district court correctly pointed out he chose not to take the risk because he wanted to secure benefits for his family. What was the risk? I mean, what was the risk? The risk for him was that if the motion was denied, which is always a possibility, his father, his elderly father, and other family members who were indicted with him would be convicted and sentenced to prison. That was the risk. Why not pursue? He filed the motion. Why not pursue the Speedy Trial Act dismissal motion? And then if that didn't work, enter the plea agreement? I think because what was clear from Mr. Warner's interpretation and some of the back and forth between the parties was that there wasn't likely to be as generous an offer available after a motion was filed. And he couldn't secure, Mr. Chan could not secure the certainty for the family members after filing that motion. Where is it in the record that he was unlikely to get a good deal? I think in Mr. Chan's declaration he describes the impact of Mr. Warner's having received the motion. There's reference in Mr. Chan's declaration where he says the government was very upset about the motion potentially being filed given that we had negotiated a plea. And I think you can infer from that that it was Mr. Chan's concern, well, if I've made the government angry, then the offer may go away and I can't secure the benefits for my family. I'm prepared to submit. Are you making sort of an argument that because there's a concurrent sentence here? As to prejudice, I think the ---- Right. But with respect to ---- I'm just wondering. With respect to Mr. Chan's designations in the Bureau of Prisons system, I know that he was already convicted of a very lengthy, lengthy sentence. Wouldn't this second plea somehow limit his ability to navigate within the Bureau of Prisons? That possibility I think is speculative, and I'm not sure that I fully understood that argument to be made in either of defense counsel's briefs. I'm not aware of that having any significant concrete example, and I'm not aware of any case law that would make that finding under Strickland part of the prejudice analysis. He did get concurrent time. He didn't add any time to his prison sentence. And I don't think, given the severe nature of his original convictions, that money laundering tacked on was going to change his designation within the prison. Well, but he says in paragraph 11 of his declaration that it does add like 20 years under the BOP calculations. That's in his declaration, Your Honor? Yeah, paragraph 11. I don't know that there was any evidence supported to submit it other than his self-serving claim. And I think ultimately the district court found ---- Well, do we know whether that's true or not? There's nothing before the Court to suggest that that is a true statement. He says, According to the BOP, it sets my release date for this case. It's September 22, 2019, a de facto 20-year sentence, which is inconsistent with the 88-months locked deal I signed with the government. And I saw that passage actually reading this morning, and I didn't understand it because 2019 would be next year, and he's got 640 months from the northern district, so I didn't even understand what he was saying about release date being next year. Help me out on this. I mean, I understand when we do prejudice analysis that we don't look to like another, we don't look at, well, he's going to already be in prison anyway on this other thing. I mean, you're supposed to just sort of look within the square that's presented. I mean, I understand the practical impact of what you're saying, but I don't think that's part of a strict prejudice analysis. Understood. And I'm prepared to submit unless the Court has additional questions. I do have one question. Yes, Your Honor. The forfeiture part that strikes me as having more practical impact, which is that on the one hand, it has been argued that his motivation was to have a house for his father. But on the other hand, there was other property that was forfeited, and if a speedy trial act dismissal had been accomplished, wouldn't he be able to retain all the other property that was forfeited? He would most likely, if the forfeiture fell with the rest of the speedy trial claim, then the forfeiture would be available to him. I think there were still issues about him ever retaining control over those properties just as a legal matter. But the practical benefit of the plea that he did take was that his father had a residence. Now, we've read the briefs, both sides. If I were to ask you, what is your home run case, what is the case that is most analogous to this one, which is your best case? I don't know that I have a case that's factually similar in terms of a speedy trial advice, but I think that the main case that is supportive of our argument that there was no deficient performance is Turner. Turner v. Calderon, I think, really has the best explanation of what's expected of Mr. Warner and why he met that when you compare the standard with his declaration. And I'll submit. Thank you, Your Honor. Thank you, counsel. Two quick things. One on the prejudice. There is law that Mr. Chan paid a $300 assessment, and there is law that they're saying it doesn't matter if you've got concurrent sentences. That takes it out of that realm in terms of prejudice. Also, he has a 2255 still pending in the Northern California, believe it or not. That case has, you know, that has. It's lower than this one? What? It's even slower than this one? Well, no, that case has gone through appeals. It had gone through many layers of appeals. So this would be the 2255. So that case has as much of a chance of being of succeeding as there was a chance that there was not going to be a success in the dismissal motion. So those are some other instances of prejudice, and the Court has already addressed the property. Prejudice, we're not, as Judge Wardlaw properly points out, we don't disregard the validity of a conviction based on that, but it explains motivation here. Are you telling me that he thinks there's a serious prospect of getting out from under the Northern district sentence, because if he did, then that wouldn't explain his conduct here? Well, his conduct here was partly because of his family, especially his parents. But that's another issue here. The prosecution said that was so important for him, that family issue. Well, guess what? The government breached that agreement. They forgot to dismiss his mother. And his attorney didn't bother to check that she'd been dismissed. And the only way we found out is because the judge issued another order to show cause why she hadn't been appearing at the hearings. So it wasn't really that important. At least it was an excuse that was brought up. So that's basically the end. What is your best case? What is your home run case? Rodriguez-Vega. And I think also Taylor v. Calderon actually talks about gross error. And then, of course, Zender and Lewis in terms of the speedy trial rights. And now, was Boria out of the Second Circuit? Was that a Speedy Trial Act case? I'm sorry? Boria. B-O-R-I-A, which is cited in your brief. Oh, I don't recall. Boria v. Keene. It may have. I'm not sure. I can look at my listing. That's okay. Thank you. Okay. Thank you. All right. Thank you very much, counsel. U.S. v. Chan is submitted. And we'll take it. Kessler v. Johnson.
judges: Wardlaw, Clifton, Katzmann